UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John Chinnici,

       Plaintiff,

           v.                          Civil Action No. 2:16-cv-264-wks-jmc

Centurion of Vermont, LLC;
Nursing Staff at Marble Valley
Regional Correctional Facility;
Cody Baker,

       Defendants.

**REPORT AND RECOMMENDATION**
(Doc. 43)

Plaintiff John Chinnici, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants Centurion of Vermont, LLC (Centurion), and the Nursing Staff at Marble Valley Regional Correctional Facility (MVRCF).[1]  (Doc. 4.) Chinnici alleges in his Complaint that, while he was in the custody of the Vermont Department of Corrections (DOC),[2] medical personnel and correctional officers at MVRCF inadequately treated a bruise on his left leg, resulting in burning and blisters on the skin of the leg and an infection that permanently scarred his leg and damaged a tattoo.  (*Id.* at 3, 5.)  Chinnici seeks monetary damages to repair the

---

[1] As reflected in the case caption, Chinnici originally included Cody Baker, a former Correctional Officer at Marble Valley Regional Correctional Facility as a defendant in this lawsuit. (*See* Doc. 4 at 1, 3.)  On July 19, 2017, however, the Court dismissed the claims against Baker for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (*See* Docs. 26, 30.)

[2] As discussed below, the Court takes judicial notice that, when Chinnici's claims arose, he was a pretrial detainee housed by the Vermont DOC.

scarring and to re-ink his tattoo, damages for his pain and suffering, and any additional relief the Court may deem appropriate. (*Id.* at 3.)

Presently before the Court is Centurion and the Nursing Staff's Motion for Summary Judgment under Fed. R. Civ. P. 56. (Doc. 43.) As required by Local Rule 56, Centurion and the Nursing Staff submitted a Statement of Undisputed Material Facts with their Motion, (Doc. 43-2), and informed Chinnici of the consequences of failing to respond. (Doc. 43-4.) Nevertheless, Chinnici has not responded to the Motion, even though the Court granted him an extension of time to respond. (*See* CMECF Entry 46.)

Concluding that Chinnici's claims against the Nursing Staff fail to name a person or legal entity capable of being sued under 42 U.S.C. § 1983, I recommend that those claims be DISMISSED for failure to state a claim. Further, I conclude that Chinnici has failed to produce evidence sufficient for a reasonable juror to conclude that Centurion or the Nursing Staff violated Chinnici's constitutional rights; accordingly, I recommend that the Motion for Summary Judgment (Doc. 43) be GRANTED in its entirety, and Chinnici's Complaint (Doc. 4) be DIMISSED with prejudice. Finally, I recommend that the Court decline to exercise supplemental jurisdiction over any state law claims raised in Chinnici's Complaint.

## Factual and Procedural Background

The sparse facts in this case are primarily drawn from Chinnici's Complaint, (Doc. 43), along with Centurion and the Nursing Staff's Statement of Undisputed Material Facts (Doc. 43-2), and the affidavit of Steven Fisher, MD, the Regional

Medical Director for Centurion of Vermont, LLC. (Doc. 43-3.) They are undisputed unless otherwise noted.

In March 2016, as a result of some bruising on his left leg, Chinnici sought medical advice from the Nursing Staff at MVRCF. (Doc. 4 at 3; Doc. 43-3 at 1, ¶ 4.) Chinnici was advised to place warm compresses on his leg to alleviate the bruising. (Doc. 4 at 3; Doc. 43-3 at 1–2, ¶¶ 5–6.) For this purpose, according to Chinnici, the Nursing Staff "put a wet towel in a small bag" and instructed Cody Baker,[3] a former Correctional Officer at MVRCF, "to heat it up in the microwave." (Doc. 4 at 3.) Baker then "heat[ed] . . . up [the towel] in the microwave . . . for [three] min[utes]," and it was placed on Chinnici's leg. (*Id.*) Chinnici further asserts that, because he has nerve damage in his left leg, he could not feel the compress burning his skin. (*Id.*) Specifically, Chinnici alleges that the compress "gave [him] 3rd degree burns, blist[er]ed [his] leg, [and] burned completely through [his] tattoo (removing parts completely)." (*Id.*) In contrast to the facts alleged by Chinnici, Dr. Fisher's affidavit states merely that Chinnici was given a form that advised him to apply a "warm compress three times a day to [his] left lower leg," and that there were no instructions regarding warming up a wash cloth in the microwave. (Doc. 43-3 at 2, ¶ 6.)

After the burns occurred, Chinnici asserts that he sought treatment from the Nursing Staff and that they "only cleaned the burns for two days with salt water, put ointment on them and covered them with bandages." (Doc. 4 at 5.) Chinnici

---

[3] As noted above, Baker was originally a defendant in this lawsuit (*see* Doc. 4 at 1, 3), prior to the Court dismissing the claims against him.

3

claims that the Nursing Staff further recommended that he "keep [his] calf uncovered all day" and provided him with bandages to put on his calf at night. (*Id.*) According to Chinnici, this was incorrect advice and he "should never [have] ke[pt the wound] uncovered." (*Id.*) As a result, Chinnici claims that "it took a little over two months [for the wounds] to heal." (*Id.*)

By contrast, Dr. Fisher's affidavit describes a more comprehensive course of treatment. He states that, during an April 1, 2016 appointment, the Nursing Staff noted a blister in the middle of Chinnici's left calf, which Chinnici told the Nursing Staff was "the result of a burn from a heating pad." (Doc. 43-3 at 2, ¶ 8.) The following day, April 2, the Nursing Staff saw Chinnici again and, allegedly, Chinnici "denied any pain or discomfort." (*Id.* ¶ 9.) The Nursing Staff advised Chinnici to rest, elevate his legs, and apply warm compresses for the bruising. (*Id.*) At the follow-up appointment the next day, April 3, the Nursing Staff noted three blisters on Chinnici's leg and observed drainage issuing from one of the blisters. (*Id.* ¶ 10.) The Nursing Staff cleaned the area with a saline solution, applied antibiotic ointment, and placed a Band-Aid over the area. (*Id.*) Despite these efforts, on April 4, the Nursing Staff noted four blisters on Chinnici's leg, one of which had drained; they changed the dressing on the blisters. (*Id.* ¶ 11.) On the next day, April 5, the area on Chinnici's leg was "open, dry, and reddened," but the Nursing Staff did not observe any infection. (*Id.* at 3, ¶ 12.) As treatment, the Nursing Staff applied an antibiotic ointment to the area and covered it with a large Band-Aid. (*Id.*) On April 6, the Nursing Staff again saw Chinnici and noted that, although his

leg was at risk for infection, it was not infected. (*Id.* ¶ 13.) Again, the Nursing Staff applied an antibiotic and covered the area with a large Band-Aid. (*Id.*)

Sometime after April 6, 2016, Chinnici was transferred from MVRCF to Southern State Correctional Facility (SSCF). (*Id.* ¶ 14; Doc. 4 at 5.) At SSCF, according to Chinnici, medical personnel determined that the "good parts of the nerve" in Chinnici's leg had been burned and "that [his] burns were badly infected." (Doc. 4 at 5.) Again, however, Dr. Fisher's affidavit departs from Chinnici's version of the facts, stating that, on April 14, the nursing staff at SSCF cleaned and dressed the blisters on Chinnici's leg and "did not note whether there was an infection." (Doc. 43-3 at 3, ¶ 15.) Dr. Fisher further states that, on April 15, a medical provider at SSCF "noted that Mr. Chinnici's leg blisters were healing," (*id.* ¶ 16), "did not make any note stating that Mr. Chinnici's leg was infected," (*id.* at 4, ¶ 17), and did not "suggest that the care Mr. Chinnici received at [MVRCF] was inappropriate." (*Id.* ¶ 18).

Despite this disagreement regarding the initial diagnosis at SSCF, Dr. Fisher and Chinnici do agree that Chinnici underwent a daily treatment plan at SSCF, consisting of cleaning his blisters, applying Silvadene cream or an antimicrobial ointment, and changing the dressing on his leg. (*Id.* ¶ 17; Doc. 4 at 5.) Following several weeks of this plan, on May 11, 2016, Chinnici met with a provider at SSCF who evaluated the leg and noted that Chinnici's leg was "almost better," but advised that Chinnici should continue the daily dressing changes. (Doc. 43-3 at 4, ¶ 19.) On May 13, 2016, according to Dr. Fisher, the SSCF provider noted that Chinnici's

5

wound was "healing well," (*id.* ¶ 20), and the wound was "considered healed" following that visit. (*Id.* ¶ 21). Finally, Dr. Fisher states in his affidavit that the care provided by the Nursing Staff and medical providers at both MVRCF and SSCF was consistent with the community medical standard. (*Id.* at 4–5, ¶¶ 24–27.)

Although Chinnici's timeline differs slightly—he states that it "took a little over two months to heal"—he apparently agrees that the blisters healed during his time at SSCF. (Doc. 4 at 5.) Chinnici claims, however, that he still has "scarring" on his leg, and that, "when pressure is applied to the scarring, it feels like fire is burning inside [his] calf." (*Id.*) He apparently attributes this pain to additional nerve damage caused by the heating pad. (*Id.*; *see id.* at 3.) In addition, Chinnici states that parts of the tattoo on his leg "are gone." (*Id.* at 5.)

Based on these facts and as a result of these injuries, on October 12, 2016, Chinnici filed suit in this Court seeking monetary damages against Centurion and the Nursing Staff at MVRCF, for their alleged inadequate treatment of his bruised left leg. (*See id.*) Along with his Complaint, which was filed on a form entitled "Form to be used by Prisoners in Filing a Complaint under the Civil Rights Act, 42 U.S.C. § 1983," Chinnici submitted a series of DOC grievance forms demonstrating that he exhausted his administrative remedies prior to bringing suit, as required by 42 U.S.C. § 1997e(a). (*See* Doc. 4-1.)

On December 7, 2016, Centurion and the Nursing Staff filed an Answer to Chinnici's Complaint, asserting, as affirmative defenses, that Chinnici failed to state a cause of action, that the Nursing Staff and Centurion are shielded by

qualified immunity, and that the medical care provided by the Nursing Staff and Centurion met the applicable standard of care.  (Doc. 9 at 2, ¶¶ 1–3.)  In their Motion for Summary Judgment, however, Centurion and the Nursing Staff inexplicably[4] and inartfully focus their argument on Chinnici's failure to file a "certificate of merit," as required by Vt. Stat. Ann. tit. 12, § 1042(a) in medical malpractice actions,[5] rather than on Chinnici's § 1983 claims.  (*See* Doc. 43 at 5–8.) Only in passing do Centurion and the Nursing Staff note that § 1983 is not the proper vehicle for Chinnici's claims because they are based on the Nursing Staff's alleged "improper medical care" rather than "deliberate indifference," as § 1983 requires.  (*Id.* at 5 n.3.)

---

[4] This argument is particularly inexplicable given that this Court has previously noted that counsel for Centurion and the Nursing Staff have failed to adequately brief issues arising under 42 U.S.C. § 1983.  *See Roberts v. Vt. Dep't of Corr.*, Civil Action No. 2:16-cv-135-cr-jmc, 2017 WL 2189707, at *4 n.2 (D. Vt. Apr. 4, 2017), *report and recommendation adopted*, 2017 WL 2198139 (D. Vt. May 17).  Here again, counsel do not address whether Centurion and the Nursing Staff are "persons" or legal entities subject to suit under § 1983.  *Compare id., with* (Doc. 43); *see also Blake v. Race*, 487 F. Supp. 2d 187, 192 n.1 (E.D.N.Y. 2007) (dismissing § 1983 claims against unnamed defendants).  Similarly, counsel neglect to argue that Centurion and the Nursing Staff may be shielded by either sovereign or qualified immunity based on their contract with Vermont.  *Compare Roberts*, 2017 WL 2189707, at *5 n.3, *with* (Doc. 43); *see also West v. Akins*, 487 U.S. 42, 56 (1988); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided.").

[5] For two reasons, it is remarkably inapt that counsel for Centurion and the Nursing Staff focus on Chinnici's alleged state law claims rather than on his § 1983 claims: first, while the heading of Chinnici's Complaint specifically indicates that he brings his claims under 42 U.S.C. § 1983, nothing in the Complaint references any state law claim, let alone specifically citing Vt. Stat. Ann. tit. 12, § 1042(a); and second, as discussed below, this Court's jurisdiction over any state law claims is supplemental to Chinnici's § 1983 claim.

## Discussion

### I.    Failure to State a Claim

As an initial matter, given that Chinnici's claims against the Nursing Staff fail to name a person or legal entity capable of being sued under 42 U.S.C. § 1983, I recommend that the Court exercise its authority under 28 U.S.C. § 1915(e)(2)(B)(ii) and DISMISS Chinnici's claim against the Nursing Staff for failure to state a claim.

Although counsel for the Nursing Staff have not raised this issue, "where a defendant has not advanced . . . a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, [*sua sponte*], address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211 (N.D.N.Y. 2008).  This authority arises from 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that, in the case of a prisoner proceeding *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (observing court may *sua sponte* consider mandatory dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)); *Marsden v. Fed. Bureau of Prisons*, 856 F. Supp. 832, 836 n.3 (S.D.N.Y. 1994) (dismissing *sua sponte* inmate's claims of improper medical treatment brought against county jail under 28 U.S.C. § 1915(d)).

Fundamentally, in order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must "identify the individuals or distinct legal entity alleged to have

acted under color of state law." *Wilson v. S. Health Partners Nursing Staff*, 1:18-cv-00013-FDW, 2018 WL 1972716, at *2 (W.D.N.C. Apr. 26, 2018); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692–95 (1978) (observing that under § 1983, liability is personal in nature); *Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 495 (E.D.N.Y. 2014) ("Section 1983 claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights."); *Whitley v. Westchester Cty. Corr. Facility Admin.*, No. 97 CIV. 0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997) ("To proceed under 42 U.S.C. § 1983, the plaintiff must name the 'person' who violated or caused the violation of plaintiff's constitutional rights.").

Here, Chinnici names the Nursing Staff as a defendant in his Complaint. (Doc. 4 at 1.)  But the Nursing Staff is not the name of an individual person within the meaning of 42 U.S.C. § 1983, nor is the Nursing Staff a legal entity capable of being sued.  *See Wilson*, 2018 WL 1972716, at *2 (dismissing claim against "Southern Health Partners' nursing staff" and "Cleveland County Detention officers" for failure to name a "person" within the meaning of § 1983 or a distinct legal entity capable of being sued); *Kinney v. Susquehanna Co. Corr. Facility*, Civil No. 3:16-cv-622, 2016 WL 1752769, at *2 (M.D. Pa. May 2, 2016) (concluding "the . . . Susquehanna County Nursing Staff are not . . . 'persons' within the meaning of § 1983 and are not suitable entities for a § 1983 claim"); *Coleman v. Terrebonne Par. Criminal Justice Complex*, Civil Action No. 13-4325, 2013 WL 6004051, at *1 n.1 (E.D. La. Nov. 13, 2013) ("The 'Nursing Staff' is not a distinct, juridical entity

capable of being sued."); *Simrin v. Corr. Med. Servs.*, No. Civ. 05-2223 RBK, 2006 WL 469677, at *4 (D.N.J. Feb. 24, 2006) (dismissing claim against "Correctional Medical Services Nurses" for failure to name a legal entity capable of being sued under § 1983); *Griffin v. Rikers Island House of Det. for Men*, No. 91 Civ. 1694 (LBS), 1993 WL 17203, at *1 (S.D.N.Y. Jan. 19, 1993) (dismissing § 1983 claim against "authorities at Rikers Island" for failure to identify specific individuals responsible for allegedly violating plaintiff's rights). Given that Chinnici's allegations against the Nursing Staff do not identify the individuals or a distinct legal entity alleged to have acted under color of state law, Chinnici has failed to state a claim under 42 U.S.C. § 1983.

Accordingly, and because Chinnici is proceeding *in forma pauperis*, I recommend that the Court DISMISS Chinnici's claims against the Nursing Staff pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Summary Judgment Motion

I further conclude that Chinnici has failed to produce evidence sufficient for a reasonable juror to determine that Centurion or the Nursing Staff violated Chinnici's constitutional rights, and thus recommend that their Motion for Summary Judgment be GRANTED on this ground.

### A. Legal Standards

#### 1. Summary Judgment

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute as to any material fact" exists when factual issues materially affecting the outcome could reasonably be resolved in favor of either party. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). In other words, "[t]he moving party is entitled to summary judgment where 'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor' on an essential element of a claim on which the plaintiff bears the burden of proof." *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22 (2d Cir. 2012) (quoting *In re Omnicom Grp., Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)). In conducting this analysis, if there is a genuine dispute regarding the material facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Although the Court accepts as true a nonmoving party's allegations that are supported by admissible evidence, and also gives the nonmoving party the benefit of all reasonable doubts and inferences, a nonmoving party's "mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). If no genuine issue of material fact exists, and the nonmoving party has had an adequate opportunity to address the issues involved by developing facts necessary to oppose summary judgment, summary judgment is proper. Fed. R. Civ. P. 56(e).

Applied here, the Court must first determine whether Centurion and the Nursing Staff have met their initial burden of demonstrating that there are no

11

genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007). "If the evidence adduced in support of the summary judgment motion does not meet this burden, 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). In other words, even though Chinnici has chosen "the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining [Centurion and the Nursing Staff's] submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Id.*

Because Chinnici is proceeding *pro se*, moreover, the Court must read his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Still, Chinnici's *pro se* status does not exempt him from the summary judgment requirements; in other words, "he cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible." *Hamlett*, 496 F. Supp. 2d at 328; *see also Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) ("[M]ere conclusory allegations, speculation[,] or conjecture will not avail a party resisting summary judgment." (first alteration in original) (quoting *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996))).

### 2. 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In this case, because Chinnici was a pretrial detainee when his claims arose,[6] his federal constitutional claim is appropriately construed as one brought for proper medical care under the Fourteenth Amendment to the U.S. Constitution. Given that different standards apply to the Nursing Staff and Centurion, the Court addresses the claims against each Defendant in turn.

---

[6] Because neither party notes that Chinnici was a pretrial detainee, the Court takes judicial notice of that fact based on the CMECF docket in Case No. 2:17-cr-77, the pending criminal case against Chinnici. *See* Federal Rule of Evidence 201(b) (judicial notice may be taken of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Singh v. U.S. Dep't of Homeland Sec.*, 526 F.3d 72, 80 n.9 (2d Cir. 2008) (taking judicial notice of conviction based in part on trial court docket sheet). As reflected in that docket, Chinnici was originally detained in state custody while awaiting trial, and was subsequently transferred to federal custody. (*See* Case No. 2:17-cr-77, Doc. 23 at 1.)

### B.     Fourteenth Amendment Claims against the Nursing Staff

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). This is so because "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner— neither cruelly and unusually nor otherwise.'" *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (quoting *Benjamin v. Fraser*, 343 F.3d 35, 49 (2d Cir. 2003)), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63, 70 (2d Cir. 2009). Still, a pretrial detainee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Darnell*, 849 F.3d at 29 (internal quotation marks omitted). Relevant to this case, "[t]he Supreme Court has held that deliberate indifference to a convicted prisoner's serious medical needs can constitute cruel and unusual punishment in violation of the Eighth Amendment." *Walker v. Wright*, No. 3:17-cv-425 (JCH), 2018 WL 2225009, at *3 (D. Conn. May 15, 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A pretrial detainee claiming prison officials were deliberately indifferent to his or her serious medical needs must satisfy a two-pronged test. *See Darnell*, 849 F.3d at 29. Under the first prong, known as the "objective" prong, the prisoner must show that the deprivation of adequate medical care was "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Walker v. Wright*, 2018 WL 2225009, at *4. Under the

14

second prong, known as the "subjective" or "*mens rea*" prong,[7] the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. *Darnell*, 849 F.3d at 35. Here, Chinnici fails to satisfy either prong.

### 1.    Objective Prong

First, Chinnici fails to establish a genuine dispute that the injury to his leg was sufficiently serious.

Determining whether a medical condition was objectively serious involves two inquiries "tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). The Court must determine "whether the prisoner was actually deprived of adequate medical care," and "whether the inadequacy in medical care [was] sufficiently serious." *Salahuddin*, 467 F.3d at 279, 280. Objectively, inadequate medical care is "sufficiently serious" if the deprivation "creat[es] a risk of death, degeneration, or extreme pain." *Cole v. Fischer*, 416 F. App'x 111, 113 (2d Cir. 2011) (internal quotation marks omitted); *see Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ("[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the

---

[7] The second prong of this test under the Fourteenth Amendment departs from the test under the Eighth Amendment. As articulated by the Second Circuit in *Darnell v. Pineiro*, 849 F.3d 17, 34–35 (2d Cir. 2017), the subjective intent requirement for deliberate indifference claims under the Eighth Amendment does not apply to claims brought under the Fourteenth Amendment. In other words, for Fourteenth Amendment claims, the second prong is defined objectively. *Id.* at 35.

basis of an Eighth Amendment violation." (internal quotation marks and citation omitted)).

Here, ample evidence demonstrates that Chinnici was not deprived of adequate medical care for his injury. According to Dr. Fisher's affidavit, Chinnici was seen by the Nursing Staff every day from April 1, through April 6, 2016; and, at each appointment, the Nursing Staff cleaned the blisters on his leg, applied antibiotic ointment, and dressed the wound. (Doc. 43-3 at 2–3, ¶¶ 8–13.) There is no evidence that this was inadequate treatment, and in fact, Dr. Fisher attests that this treatment was "consistent with the community [medical] standard." (*Id.* at 5, ¶ 25.) There is no evidence supporting Chinnici's conclusory claim that he was denied treatment for his leg, or that the Nursing Staff ignored his health requests. *Cf. Summerville v. Faciuna*, No. 05-cv-6459 (CJS), 2009 WL 2426021, at *7 (W.D.N.Y. Aug. 6, 2009) (concluding inmate received adequate treatment when nurses responded to inmate's requests); *Santiago v. City of New York*, No. 98-cv-6543 (RPP), 2000 WL 1532950, at *6 (S.D.N.Y. Oct. 17, 2000) (holding that plaintiff failed to state a deliberate indifference claim because he received prompt medical treatment within hours after he complained of pain).

In fact, Chinnici acknowledges in his Complaint that he was treated by the Nursing Staff for his bruised leg and for the blisters that developed. (Doc. 4 at 5.) Rather than arguing that he failed to receive prompt or adequate care, Chinnici contends the Nursing Staff should have provided different treatment advice or a different treatment plan. (*See generally id.*) Not only is this contention

unsupported by any evidence suggesting a more effective treatment plan, but more importantly, "[a] difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citations omitted)); *see Jimenez v. Sommer*, No. 14-cv-5166 (NSR), 2017 WL 3268859, at *6 (S.D.N.Y. July 28, 2017) ("Plaintiff['s] contention that he should have received other forms of treatment amounts to a difference of opinion as to appropriate medical treatment, which is not actionable under the Eighth Amendment."); *Wandell v. Koenigsmann*, 99-cv-8652 (WHP), 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000) ("[I]t is well established that mere differences in opinion regarding medical treatment do not give rise to an Eighth Amendment violation." (internal quotation marks omitted)). Put another way, although the facts set forth in Chinnici's Complaint are at odds with those stated in Dr. Fisher's affidavit, those facts are not material because they involve mere differences in opinion regarding medical treatment.

Chinnici also fails to establish a genuine dispute regarding whether his injuries were sufficiently serious. Although he complains of pain when pressure is applied to the scarring on his leg (Doc. 4 at 5), he provides no factual support for this conclusory and self-serving statement, nor does he offer specific evidence that the allegedly inadequate medical care significantly affects his daily activities or

quality of life.  *See Cole*, 416 F. App'x at 113 (concluding "use of a makeshift

hot[]pack to treat [prisoner's] chronic back pain, inadvertently resulting in a small

second-degree burn" was not "sufficiently serious to cause possible death,

degeneration, or extreme pain"); *Seymore v. Cherchever*, No. 12-cv-8879 (KBF), 2016

WL 3645197, at *6 (S.D.N.Y. June 29, 2016) ("[P]laintiff's own allegation of pain is

insufficient to raise an issue of fact in the fac[e] of the lack of such evidence in the

record.").

Based on the foregoing, under the "objective" prong of the two-pronged

deliberate indifference test, Chinnici fails to establish a genuine dispute that the

injury to his leg was sufficiently serious.

### 2.    *Mens Rea* Prong

Moreover, under the second prong of the deliberate indifference test,

Chinnici's Complaint contains no allegations regarding the Nursing Staff's *mens*

*rea*, let alone specific facts sufficient to establish a genuine dispute of material fact.

As stated above, to establish a due process claim for deliberate indifference to

conditions of confinement, the *mens rea* prong requires a pretrial detainee to prove

that "the defendant-official acted intentionally to impose the alleged condition, or

recklessly failed to act with reasonable care to mitigate the risk that the condition

posed to the pretrial detainee even though the defendant-official knew, or should

have known, that the condition posed an excessive risk to health or safety."

*Darnell*, 849 F.3d at 35.  Here, Chinnici's Complaint does not allege, and Chinnici

does not attempt to prove, that the Nursing Staff either intentionally caused the

burns and blisters on his legs or recklessly failed to act with reasonable care

regarding the burns and blisters.  (*See generally* Doc. 4.)  Moreover, as noted above,

Dr. Fisher states in his affidavit that the care provided by the Nursing Staff was

consistent with community medical standards.  (Doc. 43-3 at 4–5, ¶¶ 24–27.)  This

statement, weighed against the complete lack of evidence provided by Chinnici,

establishes that no genuine dispute exists regarding the Nursing Staff's culpability

under the *mens rea* prong of the deliberate indifference test.

Accordingly, Chinnici has failed to meet his burden regarding his Fourteenth

Amendment claim against the Nursing Staff.

### C.    Fourteenth Amendment Claims against Centurion

Similarly, Chinnici's claims against Centurion fail because Chinnici does not

show that a policy or custom promulgated by Centurion caused the Nursing Staff to

provide him with inadequate care.

Generally, an employer is not liable for the acts of its employees under the

tort theory of respondeat superior in suits brought pursuant to § 1983.  *See Polk*

*Cty. v. Dodson*, 454 U.S. 312, 325 (1981).  Although this rule was initially

established in the context of municipal employers, it has been extended to private

employers as well.  *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir.

1982); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982); *Draeger v.*

*Grand Cent., Inc.*, 504 F.2d 142, 145–46 (10th Cir. 1974).  Accordingly, in the

ordinary case, private employers like Centurion are not liable for the constitutional

torts of their employees, "unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (alteration in original) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)); *see also Vega v. Fox, et al.*, 457 F. Supp. 2d 172, 183 (S.D.N.Y. Feb. 21, 2006); *Cochran v. CCA-LAC Med. Dep't*, No. 1:06-cv-116, 2007 WL 431118, at *2–3 (D. Vt. Feb. 5, 2007).

In this case, it is arguable that Centurion is more than a mere private corporation, since it provides medical care to prisoners on behalf of the State of Vermont. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided."). But regardless of whether Centurion is considered a private corporation or a state actor, Chinnici still must prove that his injury was caused by an action taken pursuant to an official policy or custom promulgated by Centurion. *Monell*, 436 U.S. at 691. Chinnici has neither made that claim nor produced evidence to support it. Rather, as detailed above, all of Chinnici's allegations involve the conduct of the Nursing Staff, specifically, their failure to adequately treat Chinnici's bruises and burns. (*See generally* Doc. 4.)

Accordingly, Chinnici has failed to meet his burden regarding his Fourteenth Amendment claim against Centurion.

20

### III.    Supplemental Jurisdiction over Medical Malpractice Claims

As noted above, although Chinnici's Complaint contains no state law claims, Centurion and the Nursing Staff inexplicably argue that Chinnici has failed to present sufficient proof to satisfy the evidentiary standards set forth in the Vermont medical malpractice statutes. *See* Vt. Stat. Ann. tit. 12, §§ 1042(a), 1908(1).  In particular, Centurion and the Nursing Staff contend that Chinnici cannot advance a medical malpractice claim because he neither filed a certificate of merit nor presented expert testimony regarding his treatment.  (Doc. 43 at 5–8); *see also See* Vt. Stat. Ann. tit. 12, §§ 1042(a), 1908(1).  Given that Chinnici proceeds under 42 U.S.C. § 1983, and not the Vermont medical malpractice statutes, it bears repeating that the Second Circuit has "never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony." *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994).  Instead, "[t]he inquiry[in a § 1983 action like this] remains whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs, not whether the doctor's conduct is actionable under state malpractice law." *Id.* Although expert testimony may "bolster" a case like this at trial, "the absence of such expert proof does not mandate dismissal . . . where the facts support a finding of deliberate indifference." *Id.*

Nevertheless, given my recommendation to dismiss all of Chinnici's federal claims, I recommend that the Court decline to exercise supplemental jurisdiction over any state law claims that may be raised in Chinnici's Complaint.  In a civil

action in which original federal jurisdiction is established, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction over state law claims, however, if the court "has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3). As the Second Circuit explained, "if [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims." *Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, I recommend that the Court refrain from exercising supplemental jurisdiction over any medical malpractice claims contained in Chinnici's Complaint.

## IV.    Leave to Amend

Finally, I recommend that the Court deny granting Chinnici leave to again amend his Complaint. Although a *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted), "a district

court may deny leave to amend when amendment would be futile," *Boddie v. New York State Div. of Parole*, No. 08-CV-911(KAM)(LB), 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that "a futile request to replead," even by a *pro se* litigant, "should be denied"). Amendment is futile when the cause of action is substantively flawed and better pleading will not cure its defects. *Cuoco*, 222 F.3d at 112; *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

Chinnici has already been granted leave to amend his Complaint, and he did not avail himself of the opportunity. (*See* Docs. 26, 30.) Further amendment of Chinnici's claims against Centurion and the Nursing Staff would be futile for the substantive reasons explained above. I therefore recommend that the Court decline to grant Chinnici leave to amend his Complaint.

## Conclusion

For the foregoing reasons, I recommend that the Court, *sua sponte*, exercise its authority under 28 U.S.C. § 1915(e)(2)(B)(ii) and DISMISS Chinnici's claim against the Nursing Staff for failure to state a claim. Further, I recommend that the Court GRANT Centurion and the Nursing Staff's Motion for Summary Judgment (Doc. 43), and DISMISS the claims alleged in Chinnici's Complaint (Doc. 4), with prejudice.

Dated at Burlington, in the District of Vermont, this 10th day of

October 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).